Robert E. HAGEL, Plaintiff,

v.

UNITED LAND COMPANY, The Hagel Deferred Compensation Plan, United Federal Savings Bank, Ron Falls, and Thomas Bandy, Defendants.

Civ. A. No. 90–1683–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 9, 1991.

Steven M. Levine, David Florin, Wilson, Elser, Moskowitz, Edelman & Dicker, Washington, D.C., for plaintiff.

John B. Raftery, Deckelbaum, Ogens & Fischer, Washington, D.C., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

This employment contract dispute raises the somewhat novel question whether an agreement providing for the payment of an employee's share of certain company profits in installments over a five-year period is an "employee pension benefit plan" or an "employee welfare benefit plan" subject to the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). At issue is whether an alleged breach of the agreement gives rise to federal ERISA claims or merely state common law claims. Because the Court concludes that the agreement is not covered by ERISA, plaintiff's complaint, which raises only claims purportedly based on ERISA, must be dismissed for lack of subject matter jurisdiction.

### Facts

Defendant United Land Company ("ULC") is a Virginia corporation engaged in real estate development.[1] Robert E. Ha-

---

1. ULC is wholly owned by United Capital Corporation, which is itself wholly owned by United Services Corporation. Prior to July 31, 1990, United Services Corporation was the wholly owned subsidiary of United Savings Bank, a Virginia bank. The Office of Thrift Supervision

gel, the plaintiff, was president of ULC and its predecessor, United Development Group, Inc., from October 1985 through August 30, 1990. During this period, plaintiff entered into an agreement with United Development prescribing his salary and bonuses.[2] The agreement stated that plaintiff would receive "an additional 'override' bonsus," described as follows:

> You are eligible for an additional "override" bonus based on the net profits resulting from the [real estate] projects developed by United Development Group, Inc. The amount of the override bonus is to be 20% of net profits from each project generated by your own efforts, and 10% of the net profits for each project generated by the efforts of others.... Net profits are determined after the project in question is closed, based on the company's normal accounting practices and will be calculated to include any project in which a net loss occurred. Except as outlined elsewhere in this letter, *the payment of an override bonus applicable to any given project will be paid in five equal annual installments. Payment of those installments will begin in the year in which the project is closed. While we do not guarantee the tax consequences of this override arrangement, it is intended that the installment payments will be deferred for tax purposes, until the year in which actually paid. Accordingly, no corporate assets will be set aside or segregated to secure the payment to you of the annual override bonuses and your right to receive those payments cannot be assigned, pledged, transferred, or alienated in any way.*

Hence, the agreement provided that plaintiff would receive a bonus based on net profits derived from development deals. Payment of bonuses was spread over five years to reduce plaintiff's tax burden. The agreement further provided that if plaintiff voluntarily resigned or was terminated "for cause" before January 1, 1991, "any installments which have not been paid as of the date of termination [would] be forfeited." On the other hand, the occurrence of certain specific events would accelerate payment of outstanding installments.[3] A subsequent letter between plaintiff and ULC, dated December 19, 1989, made minor changes to the agreement, but left the principal features of the override bonus scheme intact. The amended agreement described in greater detail how net profits and losses from development projects would offset each other with the result that plaintiff might not receive any bonus in a given year.[4]

Plaintiff alleges that he received several annual override bonus payments under the agreement beginning shortly after March 1987. He further alleges that during the summer of 1990, the composition of the Board of ULC changed, thus triggering

---

appointed the Resolution Trust Corporation ("RTC") Receiver of United Savings Bank on July 31, 1990, and on that date the RTC transferred the assets of United Savings Bank to a newly created entity, United Federal Savings Bank.

2. *See* Plaintiff's Exhibit A, attached to the complaint. The exact date of the agreement is not clear from the record. The agreement bears the date October 30, 1986 in its heading, yet the signature line bears the date January 21, 1988. Plaintiff states that the agreement was entered into "sometime in or prior to March, 1987." Complaint ¶ 11. This discrepancy is immaterial to a resolution of the pending dismissal motion.

3. The agreement provided that "any unpaid override installments for closed projects will become immediately due" upon (1) plaintiff's becoming permanently disabled, (2) plaintiff's death, (3) the date that there is a change in the control or composition of the board of United Development Group, Inc., or (4) the date the board terminates the agreement without cause.

4. The amended agreement explained:

The "override" bonus applicable to a project will be payable in five equal annual installments beginning in the year in which the project is closed ("annual installment"). To determine the "override" bonus compensation to be paid for a year, all annual installments for a given year, including negative annual installments determined where a project has suffered a gross project loss, will be aggregated. No "override" bonus compensation will be paid for a year if the aggregation of all annual installments for that year is zero or negative.... The sum of unpaid annual installments, including unrecovered negative annual installments, is the net "override" bonus.

accelerated payment of the override bonus installments he was owed. On August 30, 1990, plaintiff gave notice terminating his employment with ULC. He contends that at the time of termination ULC owed him $255,000 in outstanding override bonus installment payments, which it continues to refuse to pay.

Plaintiff's position is that his agreement with ULC is an "employee pension benefit plan" or an "employee welfare benefit plan" covered by ERISA.[5] Plaintiff's complaint contains four counts, which charge the officers of ULC with numerous violations of ERISA, and seeks punitive damages, statutory fines set forth in ERISA, and other relief in addition to the $255,000 in unpaid bonuses. Defendants filed a Motion to Dismiss the complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P. Oral argument was held and the Court ordered three of the complaint's four counts dismissed with prejudice.[6] Plaintiff submitted a motion for reconsideration of that ruling along with additional evidence. In that submission, the plaintiff made clear that all four counts of its complaint were based on ERISA and hence must be sustained or dismissed together. The Court now reviews *seriatim* plaintiff's claims that the agreement created an employee pension benefit plan or an employee welfare benefit plan subject to ERISA.[7]

*Analysis*

I. Employee Pension Benefit Plan

■ "[B]y its terms, ERISA applies only to 'an employee welfare benefit plan or an employee pension benefit plan or a plan which is both.'" *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574 (5th Cir.1980), quoting 29 U.S.C. § 1002(3). ERISA defines an "employee pension benefit plan" or "pension plan" as

> any plan, fund, or program ... to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> > (i) provides retirement income to employees, or
> >
> > (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, [or] the method of calculating the benefits under the plan....

29 U.S.C. § 1002(2)(A). The Department of Labor has issued regulations intended to "clarify the limits of the defined terms 'employee pension benefit plan' and 'pension plan'...." 29 C.F.R. § 2510.3–2(a) (1990). In terms pertinent to this case, the regulations distinguish between a mere bonus program and a pension plan:

> *Bonus program.* For purposes of Title I of the Act and this chapter, the

---

**5.** Plaintiff also filed a state court action against defendants arising out of the same facts and alleging various state law claims, including breach of contract. The Resolution Trust Corporation removed the case to this Court, which now has under advisement a motion to remand the case to state court. *See Hagel v. United Land Co. et al.,* Civ. No. 91–23–A (E.D.Va. Jan. 7, 1991).

**6.** *Hagel v. United Land Co. et al.,* Civ. No. 90–1683–A (E.D.Va. Jan. 25, 1991). Counts I–III of the complaint clearly allege violations of ERISA. As the Court determined during oral argument that the agreement was not subject to ERISA, these counts were dismissed with prejudice. Count IV appeared to state a claim of common law fraud. The Court took under advisement the matter of whether to dismiss Count IV without prejudice to bringing it in state court or to dismiss it with prejudice as duplicative of a claim pending in the related

case of *Hagel v. United Land Co. et al.,* Civ. No. 91–23–A (E.D.Va.).

**7.** The analysis below relies only on plaintiff's complaint and copies of the agreement and amended agreement, which are attached to the complaint as Plaintiff's Exhibits 1 and 2. Therefore, as no submissions beyond the complaint are relied upon, it is appropriate to treat defendant's motion as a motion to dismiss rather than for summary judgment. *See* Rule 12(b)(6), Fed.R.Civ.P. Even assuming, however, that the motion should be treated at one for summary judgment, plaintiff has been given ample opportunity to submit additional evidence, both during oral argument and in connection with plaintiff's motion for reconsideration, and plaintiff has done so. After reviewing all the pleadings and evidence submitted by the parties, the Court concludes that no genuine issue as to any material fact exists and defendant is entitled to judgment as a matter of law.

terms "employee pension benefit plan" and "pension plan" shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are *systematically deferred to the termination of covered employment or beyond,* or so as to provide retirement income to employees.

29 C.F.R. § 2510.3–2(c) (1990) (emphasis added).

Plaintiff's agreement with ULC is a mere incentive bonus program; it meets neither the statutory definition nor the regulatory clarification of "employee pension benefit plan." To begin with, the agreement was not intended to, and did not, "provide retirement income" to plaintiff. Nor did the agreement defer plaintiff's receipt of income "to the termination of covered employment or beyond." Instead, "the terms in question simply established a ... form of compensation for the business created by the [plaintiff]." *Fraver v. North Carolina Farm Bureau Mutual Insurance Co.,* 801 F.2d 675, 678 (4th Cir.1986) (holding that contractual provisions creating certain termination benefits for insurance agents based on the amount of business an agent had developed were not an ERISA "pension plan"), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). Put another way, the agreement provided plaintiff with income, in the form of a bonus, *during* the course of his employment. Its purpose was not retirement income, but deferral of profit sharing income for tax purposes. As such, the agreement is outside ERISA's scope. This is confirmed by the fact that payments under the agreement were not *"systematically* deferred to the termination of covered employment or beyond," 29 C.F.R. § 2510.3–2(c) (1990), as required by the Department of Labor's clarifying regulation.

Plaintiff contends the agreement meets the requirement that a plan result in the "deferral of income by employees for periods extending to the termination of covered employment or beyond," 29 U.S.C.

§ 1002(2)(A)(ii), because in this case some override bonus installment payments allegedly became due after plaintiff had terminated his employment with ULC. As further support for his position, plaintiff points out that the five-year bonus override installment provision made it likely, though not certain, that some bonus payments would be made to plaintiff after termination of his employment with ULC. Plaintiff thus interprets § 1002(2)(A)(ii) as requiring only that *some portion* of deferred income become due, under the particular facts of a case, after termination of employment. This argument is ultimately unpersuasive. A more natural reading of § 1002(2)(A)(ii)'s requirement that there be a "deferral of income ... to the termination of covered employment or beyond" is that the statute requires that a plan generally defer the receipt of income to the termination of employment. The statute is not satisfied when, under the facts of a particular case, a portion of withheld income happens to become due after termination. This reading comports not only with the language, but with the general purpose of ERISA to protect employees' expectations concerning the receipt of retirement income.[8] Moreover, this reading also accords with the Department of Labor's interpretation of ERISA, reflected in the regulatory requirement that an "employee pension benefit plan" shall not include bonus payments made by an employer for work performed "unless such payments are *systematically* deferred to the termination of covered employment or beyond...." 29 C.F.R. § 2510.3–2(c) (1990) (emphasis added). The override bonus payments here at issue were not systematically deferred to the termination of plaintiff's employment. They were, on the contrary, received by plaintiff during his employment with ULC.

Although research discloses no decision directly on point, a number of analogous decisions support the result reached here. *See Fraver v. North Carolina Farm Bu-*

---

**8.** *See* 29 U.S.C. § 1001(a) ("The Congress finds ... that despite the enormous growth in [employee benefit] plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans").

*reau Mutual Insurance Co.*, 801 F.2d 675, 678 (4th Cir.1986) (holding that contracts under which insurance agents received bonus upon termination were not a "pension plan" under ERISA but were "simply employment or agency contracts" establishing "a final form of compensation for the business created by the agent ... not ... retirement income"); *Murphy v. Inexco*, 611 F.2d 570 (5th Cir.1980) (finding program where employees received royalties on oil well production not covered by ERISA); *Foltz v. U.S. News & World Report, Inc.*, 627 F.Supp. 1143, 1164–65 (D.D.C.1986) (holding that stock bonus plan under which employees received stock that they were required to resell to company upon retirement or termination was not a pension benefit plan); *Jervis v. Elerding*, 504 F.Supp. 606, 609 (C.D.Cal.1980) (agreement to provide employee with apartment upon her retirement for period equal to period of employment "was part of the present compensation arrangement, inserted as consideration for plaintiff's continued services to defendant, rather than as part of a 'plan' providing for retirement income"); *see also* U.S. Department of Labor Opinion Letter 76–110 (Sept. 28, 1976) (holding that contract between employer and individual employee providing employee with additional retirement compensation "is an individual contract ... and does not constitute an employee pension benefit plan within ... section 3(2) of ... ERISA"); U.S. Department of Labor Opinion Letter 76–79 (May 25, 1976) (holding that contract between employee and his employer pertaining to payment of pension upon age 65 "is an employment contract and is not an 'employee pension benefit plan' as that term is defined in the Act.... The agreement is not subject to the requirements of ... ERISA"). In sum, the agreement is not an "employee pension benefit plan" subject to ERISA.

II. Employee Welfare Benefit Plan

■ Plaintiff also contends that the agreement is an ERISA "employee welfare benefit plan." ERISA defines such a plan as

any plan, fund, or program ... to the extent that such plan, fund, or program

was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in [29 U.S.C.] section 186(c) ... other than pensions on retirement or death....

29 U.S.C. § 1002(1). The only benefits described in 29 U.S.C. § 186(c) and not listed in the definition given above are "holiday, severance or similar benefits." 29 C.F.R. § 2510.3–1(a)(3) (1990) (analyzing the relationship between 29 U.S.C. §§ 186(c) and 1002(1)(A)). This statutory definition does not embrace agreements that may incidentally result in payment of benefits after death or disability. Merely because an agreement "may in some circumstances continue to pay ... proceeds after an employee's death or disability does not make it a welfare benefit plan." *Murphy v. Inexco Oil Co.*, 611 F.2d at 574. An agreement must be "established or maintained *... for the purpose of providing*" the benefits listed in the statute. 29 U.S.C. § 1002(1) (emphasis added). The agreement in issue does not meet this test. It is true, to be sure, that the agreement provided that payment of any outstanding override bonus installments would be accelerated upon one of four events, including plaintiff's total, permanent disablement or plaintiff's death. But, significantly, the objective of the agreement was not disability compensation; it was instead designed to provide a financial incentive for plaintiff to improve his performance while employed with ULC. Thus, the agreement on its face shows that its purpose did not encompass disability or death payments. There is no guarantee that plaintiff or his beneficiaries would receive any payments under the agreement if plaintiff were disabled or killed. In fact, the agreement specifically provided that in the event of net losses on

development projects, plaintiff would receive no payments. And this was so whether or not he died or became disabled. Moreover, the agreement provided that if plaintiff was terminated for cause or voluntarily quit before January 1991, outstanding override bonus payments would be forfeited. In sum, the agreement itself refutes the contention that its purposes included insuring against loss relating to death or disability, or the other purposes in the statutory definition of an employee welfare benefit plan, and hence it did not constitute such a plan. The agreement is similar to others designed "to reward employees for their service with present benefits" and found to be outside ERISA's scope. *Murphy v. Inexco Oil Co.*, 611 F.2d at 574 ("primary purpose" of oil production royalty program "was to reward employees for their service with present benefits"; agreement was not a welfare benefit plan); *see Foltz v. U.S. News & World Report, Inc.*, 627 F.Supp. at 1164–65 (stock bonus plan allotting shares of common stock to employees which were sold back to company upon retirement or termination not a welfare benefit plan). Compensation plans held to be welfare benefit plans differ markedly from the agreement in issue. *See In re White Farm Equipment Co.*, 788 F.2d 1186, 1191 (6th Cir.1986) (plan providing life, health, and welfare insurance to retirees and eligible dependents was clearly an employee welfare benefit plan); *Hayden v. Texas–U.S. Chemical Co.*, 557 F.Supp. 382, 385 (E.D.Tex.1983) (finding defendant's "Permanent and Total Disability Plan" covering its employees to be an employee welfare benefit plan).

### Conclusion

The agreement at issue is neither an employee pension nor employee welfare benefit plan subject to ERISA. While the facts of this case may give rise to valid state and common law claims, they do not support an action brought in federal court under ERISA. Therefore, plaintiff's complaint, which he concedes consists entirely of alleged violations of ERISA, should be dismissed with prejudice.