Brenda SCHWARTZ, Plaintiff,

v.

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON

and

Citizens Financial Group,
Inc., Defendants.

No. 05–cv–04799–CG.

United States District Court,
E.D. Pennsylvania.

Jan. 12, 2007.

Marc H. Snyder, Frank & Rosen, Lance S. Rosen, Rosen, Moss, Snyder & Bleefeld, Elkins Park, PA, for Plaintiff.

James P. Hollihan, Duane Morris LLP, Pittsburgh, PA, for Defendants.

## MEMORANDUM

GREEN, Senior District Judge.

### I. Factual and Procedural Background

Plaintiff, Brenda Schwartz, commenced the instant action, pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 *et seq.*, claiming that she was wrongfully denied short term disability ("STD") benefits. Defendants, Citizens Financial Group, Inc. (Citizens) and Liberty Life Assurance Company of Boston (Liberty)[1] were Schwartz's employer and disability benefits administrator, respectively.

The following facts are undisputed. Plaintiff was employed as an underwriter for Citizens. Plaintiff was diagnosed with Multiple Sclerosis (MS) by her neurologist, Dr. Tausch, in March 2002. Her treating physicians, Dr. Tausch (neurologist), Dr. Cowen (family physician), and Dr. Goldberg (neuro-psychologist), documented in Plaintiff's medical records Plaintiff's deteriorating physical condition and the onset of related psychological difficulties over the subsequent two and a half year period. On October 8, 2004, Plaintiff informed her employer that she was no longer able to perform her duties as an underwriter due to the physical and mental effects of her conditions. She subsequently applied for group STD benefits from Citizens' Group Plan which was administered by Liberty.

---

**1.** The Court shall refer to Citizens and Liberty collectively as "the Defendants" except where it is necessary to distinguish the parties.

Upon initial review of Plaintiff's short term disability claim and medical records in support thereof,[2] Liberty approved Plaintiff's receipt of benefits under Citizens' STD Plan to commence on October 15, 2004. Plaintiff's doctors continued to provide Liberty with additional medical information, including treatment notes, detailed summaries of medical testing and related medical conclusions. In a letter dated February 11, 2005, however, Liberty informed Plaintiff of the company's decision to terminate STD benefits, retroactive to December 16, 2004. The denial of Plaintiff's benefits was based on Liberty's consulting physicians'[3] reviews of Plaintiff's claim and accompanying medical records.

The denial letter advised Plaintiff that pursuant to ERISA, she was entitled to a review of the denial by requesting such in writing from Liberty. On July 6, 2005, Plaintiff's counsel allegedly mailed an appeal request by overnight carrier, which included additional medical information from Plaintiff's three treating physicians. Included in the appeal was a statement from Dr. Goldberg in which he opined, *inter alia,* that "... severe psychiatric pathology clearly impacts [Plaintiff's] cognitive performance ... and functional capabilities." In response to Liberty's consulting physician's comment which suggests dubious effort from Plaintiff during her testing, Dr. Goldberg continued, "there was no reason to believe that she was not putting forth a good effort on the testing." (*See* Plaintiff's Mot. for Summ. J., p. 14).

In addition, Plaintiff's appeal included a medical report from Dr. Mildred Nevins, who examined Plaintiff for eligibility to receive Social Security Disability benefits.[4] Again, Liberty's consulting physicians recommended that Citizens deny Plaintiff's appeal. In a letter dated August 25, 2005, Citizens informed Plaintiff that her appeal was denied.

Per Citizens' Summary Plan Description ("SPD"), the Plan Administrator was Citizens Financial Group. The Claims Administrator was Liberty Life Assurance Company of Boston. Defendants' Declaration of Paula McGee provides the Disability Risk Management Agreement specifically detailing, "[Citizens] will make the determination as to the final disposition of any ERISA appeals on claims that were denied or terminated by Liberty." "Liberty will provide [Citizens] with advice on [disputed] claims." (*See* Decl. of Paula McGee, Ex. A, LL–0026).

Plaintiff has moved for summary judgment asserting that Defendants: 1) arbitrarily and capriciously terminated Plaintiff's benefits; and, 2) denied Plaintiff a full and fair review of her administrative claims file. Defendants filed a cross-motion for summary judgment asserting that Plaintiff's claim should be dismissed for

---

**2.** Dr. Cowen submitted a physical restrictions form to Liberty confirming his diagnosis of MS and that Plaintiff was suffering from a Class 5 physical impairment and Class 4 mental/nervous impairment. Class 5 physical impairment is noted as a severe limitation of functional capacity; incapable of minimum activity. Class 4 mental/nervous impairment is noted as unable to engage in stressful situations or engage in interpersonal relations; marked limitations.

**3.** Liberty's consulting physicians were Dr. Oakes, a physician specializing in psychology and Dr. Hopkins, a physician specializing in internal and occupational medicine.

**4.** Dr. Mildred Nevins was appointed to independently evaluate Plaintiff's eligibility for receipt of Social Security Disability (SSD) benefits. Plaintiff was examined on December 17, 2004 and March 23, 2005 by Dr. Nevins and she was subsequently approved for SSD benefits.

lack of federal subject matter jurisdiction, since the plan in question was not an employee benefit plan covered by ERISA. Arguing in the alternative, Defendants assert that if this Court concludes that ERISA governs Citizens' STD Plan, then the evidence in Plaintiff's benefits claim, as reviewed by Liberty's consulting physicians, establishes that Plaintiff was not suffering from an eligible disability. As such, she was not precluded from performing the physical tasks required to work as an underwriter. Also, Defendants argue that they cannot be determined to have been involved in procedural ERISA violations because the STD plan does not qualify as an ERISA benefit plan. Thus, Defendants conclude that their actions were not arbitrary and capricious in discontinuing Plaintiff's short term disability benefits.

## II. *Discussion*

### a. **Standards for Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The evidence must be viewed in the light most favorable to the non-moving party. *See American Flint Glass Workers Union, AFL–CIO v. Beaumont Glass Co.*, 62 F.3d 574, 578 (3d Cir. 1995). *See also Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). Regarding materiality, "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the instant case, this Court must determine whether ERISA is the appropriate substantive law to apply. If ERISA is applicable, "the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant."[5] 29 U.S.C. § 1132(e)(1).

### b. **The applicability of ERISA as substantive law**

Pursuant to ERISA, a plan participant may bring a cause of action to recover benefits due under the terms of the plan or to enforce rights under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). ERISA covers "employee benefit plans," which it defines as plans that are "an employee welfare benefit plan," "an employee pension benefit plan," or both. 29 U.S.C. § 1002(3). An employee welfare benefit plan is defined as:

[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants ... through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment ...

ERISA § 3(1), as codified, 29 U.S.C. § 1002(1).

In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) the court explained the implications of the terms "plan, fund, or program" and "establish[ ] and maintain[ ]." *Id.* A plan can be "established or maintained, or both, in writing," although ERISA does not require "a formal,

---

**5.** Pursuant to ERISA, the term "participant" is defined as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7).

written plan." *Id.* at 1372. At a minimum, … a "plan, fund, or program" under ERISA implies the existence of intended benefits, intended beneficiaries, *a source of financing,* and a procedure to apply for and collect benefits. *Id.* at 1372 (emphasis added). The "source of financing" implication has become a critical factor in determining whether a plan is, as a matter of law, governed by ERISA.

■ ERISA broadly regulates employee welfare benefit plans to include those plans that provide short term disability benefits; however, the Secretary of Labor has promulgated a carve-out exception. Thus, an employee benefit plan which falls within what the Department of Labor (DOL) refers to as "payroll practices" is exempt from governance under ERISA. *Capriccioso v. Henry Ford Health Sys.,* No. 99–1369, 2000 WL 1033030, *2, 2000 U.S.App. LEXIS 17535 at *5 (6th Cir.2000); *See also Laney v. Independence Blue Cross,* Civ. A. No. 04–1822, 2006 WL 724559, **4–5, 2006 U.S. Dist. LEXIS 11672 at * 15 (E.D.Pa. March 15, 2006) (holding the court had no subject matter jurisdiction because the defendant-employer made plan payouts from its general assets and thus the plan was not governed by ERISA).

Specifically the regulations state:
[T]he terms 'employee welfare benefit plan' and 'welfare plan' shall not include payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as … psychiatric treatment) …

29 C.F.R. 2510.3–1(b)(2).

As explained in *Massachusetts v. Morash,* 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989), ERISA was passed by Congress with the intent of safeguarding employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits. *Id.* at 112–113, 109 S.Ct. 1668 (citing *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 15, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). In instances, however, where the source of financing is the general assets of the employer, as opposed to a trust fund, insurance fund, or some other independent third party source, courts have interpreted these plans as excluded from the governance of ERISA. *See e.g. Capriccioso,* 2000 WL 1033030, *2, 2000 U.S.App. LEXIS 17535, at *5–6 (holding base salary paid for short term disability plan benefits were paid out of general assets and thus a payroll practice not subject to ERISA); *Bowers v. Multimedia Cablevision, Inc.,* Civ. A. No. 96–1298–JTM, 1998 WL 856074, *5, 1998 U.S. Dist. LEXIS 19319 at *14 (D.Kan. Nov.3, 1998) (holding disability payments at sixty percent of the employee's usual rate of compensation paid from the company's general assets amounted to a payroll practice exempt under ERISA).

■ Moreover, the DOL has taken the position in multiple advisory opinions "that payment of less than normal compensation from an employer's general assets … [when] an employee is absent for medical reasons may … also constitute an employer 'payroll practice' which is not an employee welfare benefit plan within the meaning of section 3(1) of Title I of ERISA." *See* 29 ERISA LEXIS Advisory Op. 93–27 A, 6 (1993); *See also* 33 ERISA LEXIS Advisory Op. 80–44A, 3–4 (1980). To the extent that short term disability payments were made from the general assets of the employer and such payments "either equal, or represent a significant portion of, an employee's normal compensation," then the DOL will conclude the plan constitutes an employer "payroll prac-

tice" within the meaning of regulation section 2510.3–1(b)(2).

 Considerable weight should be accorded by courts to an executive department's interpretation of a statutory scheme it is entrusted to administer. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The DOL is the administrative agency with expertise over the enforcement of ERISA matters.

Regarding the specific claims in the instant case, Defendants seek summary judgment with regard to Plaintiff's ERISA claims, arguing that the Citizens Group STD Benefit Plan (Plan) does not meet the definition of an "employee welfare benefit plan" or "employee benefit plan" as defined by ERISA. Defendants have produced evidence, in the form of a declaration from Wallace R. Demary, Senior Vice President and Director of Employee Benefits for Citizens, which details and summarizes the Plan. *See* Demary Decl. In his affidavit, Mr. Demary states "Citizens maintains and operates the Citizens STD Plan as a payroll practice, whereby Citizens makes payments to those employees qualified for short term disability benefits out of Citizens' general assets." [6] *Id.* at para. 3. Mr. Demary asserts this practice was in place in 2004. *Id.* at para. 4. Further, the court notes that the Citizens summary plan description stated that the Source of Funds for Short Term Disability was "[p]aid in full by Citizens out of its general assets," [7] thereby providing notice to the plan participants. *Id.* at Ex. 1, CB–0040. Plaintiff has not provided this court with contradictory evidence regarding the source of funding.

Plaintiff, in response to Defendants' claims, disputes Defendants' assertions that Citizens' STD Plan is not an ERISA plan. Plaintiff argues that on more than one occasion Defendants held out the plan and plan participant protections as governed by ERISA. *Id.* at Para. II(b). The SPD, which Citizens provided to each plan participant, indicated in a section called *"Your Rights Under ERISA"* that "[a]s a participant in the Citizens Financial Group, Inc. Disability Plans, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA)." *See* Plaintiff's Resp. to Defendants' Mot. for Summ. J. Ex. D; *See also* Demary Decl. Ex. 1. Further, Liberty's February 11, 2005 denial letter instructs, "[u]nder the Employment Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to: [Liberty]." *See* Plaintiff's Resp. to Defendants' Mot. for Summ. J. Ex. E, LL–0051. Plaintiff relies on *Capriccioso* in support of her premise that holding out the benefits plan as an ERISA plan may give rise to governance under ERISA. *Id.*, 2000 WL 1033030, *3, 2000 U.S.App. LEXIS 17535, at 8–9.[8] In addition, the Court

---

6. Paragraphs five and six of the Demary Declaration, respectively assert that there was not an insurance aspect to the Citizens STD Plan and that no separate source of funding was maintained for the plan.

7. In comparison, the Long–Term Disability Funding Source, as noted in the SPD, is "[f]unded through payment of premiums on an insured basis to Liberty Life Assurance Company of Boston."

8. In *Capriccioso*, the Court of Appeals agreed with the district court stating, "The booklet which describes benefits makes no mention of ERISA, and ... there is no evidence before the Court to raise a question of fact as to whether [Defendant] held out its ... plan as an ERISA plan. Accordingly, the Court finds this factor supports Defendant's contention that its short-term benefit plan falls within the payroll practice exception." 2000 WL 1033030, 2000 U.S.App. LEXIS 17535 (6th Cir.2000) (emphasis removed).

notes the Citizens' SPD detailed that the Type of Plan for the Short Term Disability Plan was a "welfare benefit plan that provides disability benefits." [9] *See* Plaintiff's Resp. to Defendants' Mot. for Summ. J. Ex. D, CB–0040. Further, Plaintiff asserts that because the disability benefits payments were not at full salary, then the payments should not be construed as "normal compensation," as required by the payroll practice exemption. 29 C.F.R. § 2510.3–1(b)(2).[10]

■■ A welfare benefit plan's source of funding is the leading indicator which both the DOL and the courts have used to determine whether said plan is subject to governance pursuant to ERISA. If the source of funding is from the general assets of the employer, as is the case with Citizens' STD Plan in the instant case, then the benefit is properly regarded as a payroll practice. As such, it is not subject to governance under ERISA. Notwithstanding Plaintiff's evidence in support of her assertion that Defendants held out the STD plan as an ERISA plan in both internal and external documents, Plaintiff has not otherwise provided any evidence to support her claim that the Plan was, in fact, an ERISA plan, financed by funds other than those from the employer's general assets On the other hand Defendants have provided the court with undisputed evidence that short term disability benefits are provided from Citizens' general assets. *See* Demary Decl. The court concludes that pursuant to the federal regulations pertaining thereto the Citizens STD Plan is not an ERISA plan. *See* 29 C.F.R. 2510.3–1(b)(2). Because Citizens' STD Plan is not an ERISA plan, this Court does not have subject matter jurisdiction over Plaintiff's claims and must dismiss Plaintiff's Complaint with prejudice. *Laney v. Independence Blue Cross*, supra..

### c. Appropriate Standard of Review if ERISA applies

As the evidence presented supports the conclusion that this Court does not have subject matter jurisdiction over Plaintiff's claims, I will not address issues that would arise if ERISA were applicable to Plaintiff's claims.

### III. *Conclusion*

An appropriate order follows.

### *ORDER*

Presently pending are the parties cross-motions for summary judgment and the respective replies thereto. **AND NOW** this day of January 2007, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED. IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** and this cause of action based solely upon ERISA is **DISMISSED,** with prejudice.

---

9. In comparison, the Long–Term Disability Type of Plan, as noted in the SPD, also states it was "[a] welfare benefit plan that provides disability benefits".

10. Citizens STD coverage offered a graduated scale of payments for up to twenty-six weeks.

For each year of service at the time disability begins, participants would get 100 percent of their pay and sixty percent for the remaining weeks of eligible disability, up to the twenty-sixth week.