James L. DAVIS, Plaintiff,

v.

OLD DOMINION TOBACCO COMPANY INC., d/b/a Atlantic Dominion Distributors, Inc., and Robin D. Ray, Individually, Defendants.

Civil Action No. 2:09cv603.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 26, 2010.

James Matthew Mundy, John Ignatius Paulson, Louis George Paulson, Paulson & Paulson PLC, Virginia Beach, VA, for Plaintiff.

Mark Edward Warmbier, Scott William Kezman, Kaufman & Canoles PC, Norfolk, VA, for Defendants.

## MEMORANDUM OPINION

REBECCA BEACH SMITH, District Judge.

The plaintiff in this case, James L. Davis, filed an Amended Complaint ("Complaint") in the Circuit Court for the City of Virginia Beach, Virginia, alleging fraud, constructive fraud, undue influence against the defendants, and breach of contract against Old Dominion Tobacco Co. Inc ("Old Dominion"). (*See* Complaint.) On December 9, 2009, the defendants removed the plaintiff's causes of action to this court, pursuant to 28 U.S.C. § 1441(b), asserting that the plaintiff's breach of contract claim "arises under" a question of federal law, namely the Employee Retirement Income Security Act ("ERISA"). (*See* Docket # 1.) On January 18, 2010, the plaintiff filed a Motion to Remand this case to the Virginia Beach Circuit Court, claiming that his claims were solely based on state law and, thus, were not removable under 28 U.S.C. § 1441(b).

For the reasons stated below, the court **FINDS** that the plaintiff's state law breach of contract claim does "arise under" ERISA, and was, therefore, properly removed to this court. The plaintiff's Motion to Remand is **DENIED.**[1]

1. Because the court finds that the plaintiff's breach of contract claim is removable, all of the plaintiff's other claims are removable under this court's supplemental and pendent jurisdiction. *See* 28 U.S.C. §§ 1367(a) and 1441(c). The issue of whether the plaintiff's

## FACTUAL BACKGROUND [2]

The plaintiff was an employee of the defendant, Old Dominion Tobacco ("Old Dominion"), for more than forty years. (Comp. ¶ 6.) Defendant Robin Ray is a co-owner and President of Old Dominion, and is the plaintiff's cousin. (*Id.* ¶¶ 3–4.) During the course of the plaintiff's employment with Old Dominion, he was promoted to Vice President. (*Id.* ¶ 6.) In 1992, after becoming Vice President, the plaintiff entered into a Deferred Compensation Agreement with Old Dominion ("1992 Agreement"). (*Id.* ¶ 7.) Under the 1992 Agreement, the plaintiff (or designated beneficiary) was eligible to receive monthly benefit payments for 180 consecutive months upon: 1) retirement from Old Dominion at the age of 65 or older; 2) retiring due to permanent or indefinite disability; or 3) his death, as long as he was employed with Old Dominion and prior to retirement. (1992 Agreement, Art. III(A)–(C).) However, if the plaintiff was terminated "for any reason other than death, disability, or retirement at age 65," he would receive no benefits under the 1992 Agreement. (1992 Agreement, Art. III(D).)

On September 16, 2008, prior to the plaintiff receiving any benefits under the 1992 Agreement, Old Dominion fired the plaintiff. (Comp. ¶ 14.) Two weeks later, the plaintiff entered into a Separation and Release Agreement with Old Dominion ("2008 Agreement"), which offered the plaintiff $72,000 in severance pay, in exchange for the plaintiff's release of any and all claims against Old Dominion, including any obligations under the 1992 Agreement. (*See* 2008 Agreement ¶¶ 2, 7.)

The "[p]laintiff now seeks to have the 2008 Document found unenforceable *and to enforce his interest in disability benefits in accordance with the 1992 Agreement* under Virginia contract and tort law claims." (Docket # 8 at 2 (emphasis added).)

## ANALYSIS

■ "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable" to the United States district court and division embracing the place where such action is pending. 28 U.S.C. § 1441(b). An action "arises under" the laws of the United States where the complaint raises issues of federal law. *See, e.g., Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."). However, regardless of whether the complaint purports to raise only state law claims, where a state law is completely preempted by federal law, then the state law claim "arises under" federal law and is removable to federal court. *Id.* at 65, 107 S.Ct. 1542.

■ With regard to ERISA, it preempts "any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan.*" 29 U.S.C. § 1144(a) (emphasis added). Moreover, any civil action brought by a participant in, or beneficiary of, an employee benefit plan to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to

other state law claims are themselves preempted by ERISA will be discussed with regard to the defendants' Motion to Dismiss, which was filed on December 16, 2009, and is also pending before this court.

2. The facts included in this section of the court's opinion are undisputed by the parties.

future benefits under the terms of the plan is completely preempted by ERISA and removable to federal court. *Metropolitan Life Ins. Co.*, 481 U.S. at 66–67, 107 S.Ct. 1542 ("'[C]auses of action within the scope of the civil enforcement provisions of § 502(a) of ERISA [29 U.S.C. § 1132(a)] are removable to federal court" even if they "purport[] to raise only state law claims."). Accordingly, there are two major issues which the court must address. First, the court must determine whether the 1992 Agreement qualifies as an employee benefit plan under ERISA. Second, if the 1992 Agreement is an employee benefit plan, the court must determine whether the plaintiff seeks to recover benefits purportedly due to him under the terms of the 1992 Agreement, to enforce rights under the terms of the 1992 Agreement, or to clarify his rights under the 1992 Agreement. The court will address these issues, in turn, below.

## I. Qualification as an Employee Benefit Plan

ERISA applies to "any employee benefit plan established or maintained by any em-ployer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a).[3] An employee benefit plan includes employee welfare benefit plans, employee pension plans, and plans that are combinations of both. 29 U.S.C. § 1002(3). Accordingly, in order to find that the 1992 Agreement in this case is an employee benefit plan, the court must find that it is a plan, fund, or program established or maintained by an employer for the purpose of providing either, or both, employee welfare benefits and employee pension benefits to employees. *See* 29 U.S.C. §§ 1002(1) and 1002(2)(A).[4]

### A. Whether A Plan, Fund, or Program is "Established"

■ A plan, fund, or program is established if, at a minimum, from the surrounding circumstances a reasonable person is able to ascertain "the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982); *see Guiragoss v. Khoury*, 444 F.Supp.2d 649, 655 (E.D.Va.2006).[5] The

---

**3.** There is no dispute by either party that the plaintiff was an employee of Old Dominion, and that the defendants are employers engaged in commerce, as defined by the statute. *See* 29 U.S.C. §§ 1002(5)-(8).

**4.** In pertinent part, an employee welfare benefit plan provides "disability or death … benefits." 29 U.S.C. §§ 1002(1). An employee pension benefit plan "(I) provides retirement income to employees, or (II) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. §§ 1002(2)(A). The 1992 Agreement provides both death benefits and retirement income. The portion of the 1992 Agreement that the plaintiff seeks to enforce is an employee pension plan, which offers retirement income in the event of an employee's retirement due to permanent or indefinite disability.

**5.** The plaintiff argues at length about whether the 1992 Agreement contains an "ongoing administrative scheme" for processing claims and paying benefits. (Docket # 8 at 12–14); *see Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11–12, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (for a severance package to be considered an ERISA plan, the severance benefits must be disbursed through an "ongoing administrative scheme"). Where, as here, a case does not involve a dispute over severance benefits, the proper inquiry is the broader test set forth in *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982), which incorporates the "ongoing administrative scheme" requirement of *Fort Halifax* in the analysis of procedures for applying for and collecting benefits. *See Hughes v. White*, 467 F.Supp.2d 791, 805 (S.D.Ohio 2006); *cf. Venezuela v. Massimo Zanetti Beverage USA, Inc.*, 525 F.Supp.2d 781 (E.D.Va.2007) (applying the "ongoing administrative scheme" analysis to

1992 Agreement clearly identifies the intended benefits in Article III, including retirement benefits and death benefits. Similarly, the 1992 Agreement clearly refers throughout Article III to the "Executive," meaning the plaintiff, as the intended beneficiary of monthly benefit payments, and, specifically in Article III(C), discusses how the Executive might assign a beneficiary to receive payments upon the Executive's death.

Additionally, the 1992 Agreement has a reasonably identifiable claims procedure. The plaintiff is correct in arguing that Article VI of the 1992 Agreement does not explicitly state the manner in which a beneficiary would initiate a claim. However, the test is whether a reasonable person could discern the appropriate procedure for initiating a claim. The fact that the 1992 Agreement identifies the plan administrator is significant to this inquiry. A reasonable person would know to initiate a claim by applying for benefits to the Board of Directors, which is the named fiduciary and administrator of the 1992 Agreement. (*See* 1992 Agreement, Art. VI(A).) Further, Article VI(A) suggests that it was the Board's duty to make discretionary decisions, such as whether someone was eligible for benefits, as opposed to ministerial duties which could be delegated to others. (*Id.*) Moreover, a reasonable person could certainly discern the appropriate procedure to appeal a denial of benefits, as the 1992 Agreement contains a very detailed appeals procedure. (*See* 1992 Agreement, Art. VI(B).)

Finally, in terms of the source of financing, the court finds that Article IV of the 1992 Agreement reasonably identifies the plan's source of financing as Old Dominion's general assets. Article IV states, in pertinent part:

> The Company shall have no obligation to set aside, earmark or entrust any fund or money with which to pay its obligations under this Agreement. The Executive, his beneficiaries or any successor in interest to him shall be and *remain simply a general creditor of the Company in the manner as any other creditor having a general claim for matured and unpaid compensation.*

(1992 Agreement, Art. IV (emphasis added).) A general creditor, having a general claim against Old Dominion, would reasonably be compensated through Old Dominion's general assets. *See Fair v. Giant of Maryland LLC,* 2006 WL 361338, No. Civ. A. DKC2005–1306, *9–11 (D.Md. Feb. 15, 2006) (finding that where an agreement "indicates benefits are to be paid by the Company, or by the Company's successor," that was sufficient to determine the source of financing); *Hughes v. White,* 467 F.Supp.2d 791, 801 (S.D.Ohio 2006) ("While none of the [evidence] establishes the exact source of financing for the purported employee benefit plan ... it may be assumed that benefits are to be paid out of the general assets of the employer."). Certainly, the 1992 Agreement indicates that Old Dominion would be the payor of any benefits to the plaintiff, thereby sufficiently indicating the source of financing.[6]

---

a case regarding a severance plan); *Mazer v. Safeway, Inc.,* 398 F.Supp.2d 412 (D.Md. 2005) (same).

**6.** While the defendant has, in part, responded to the plaintiff's position on this issue by arguing that the 1992 Agreement constitutes a "top-hat" plan, that argument is both premature and irrelevant to the present inquiry.

The defendants' approach erroneously conflates ERISA's procedural requirements with its substantive provisions. When determining whether an employee benefit plan is a "top-hat" plan, the court has to determine, among other things, whether the plan is "unfunded" or not. However, the question for the court on the Motion to Remand is not whether the

Further, the court disagrees with the plaintiff's assertion that insofar as the 1992 Agreement has Old Dominion's general assets as its source of financing, the plan is not an ERISA plan. (*See* Docket # 8 at 10.)[7] The plaintiff relies on cases where courts have found that a Department of Labor regulation, which exempts certain benefits from ERISA coverage, controls. That regulation exempts from ERISA's definition of "employee welfare benefit plan" certain "payroll practices" relating to

> payment of an employee's *normal compensation* out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to work or is otherwise absent for medical reasons, such as pregnancy or psychiatric treatment.

29 C.F.R. § 2510.3–1(b)(2) (emphasis added). However, those cases and that regulation do not apply here. First, the provision in the 1992 Agreement at issue in this case is an "employee pension plan," not an "employee welfare benefit plan." Though the benefits at issue in this case are enti- tled "disability" benefits, those benefits are *only available upon retirement* due to "permanent or indefinite" disability. (*See* 1992 Agreement, Art. I(A), III(B).) As such, those benefits are disbursed as retirement income in accordance with what ERISA defines as an "employee pension plan."[8] Accordingly, when disability benefits of this sort are paid through general assets, the "payroll practices exemption," which only applies to "employee welfare benefit plans," does not apply. *See Combs v. Kentucky Wesleyan College*, 2008 WL 145253, No. 4:05CV–139–JHM *8 (W.D.Ky. Jan. 11, 2008) (holding that use of a company's general assets to pay medical coverage upon an employee's retirement was pursuant to a "retirement contract" and was not a payroll practice exempted from ERISA).

Secondly, the "disability benefits" which the plaintiff now seeks do not qualify as "normal compensation." The issue underlying the "payroll practices exemption" is whether an employer is substituting normal modes of compensation with disability benefits, for example, while an employee is

---

1992 Agreement is "unfunded," but, instead, whether the 1992 Agreement has sufficiently identified a "source of funding" to make the Agreement an ERISA plan, at all. Accordingly, the two analyses are distinct. *See Guiragoss*, 444 F.Supp.2d at 656 (finding that, for the purposes of preemption, a "source of financing" had been adequately established because "Section 2 [of the agreement] suggests that funds will be transferred to employee accounts from the Company's general assets," but finding that the plan was "unfunded" for "top-hat" purposes).

**7.** A company's general assets are, barring some exception, a sufficient source of financing for the threshold question of whether a plan is covered by ERISA. *See Fort Halifax*, 482 U.S. at 18, 107 S.Ct. 2211 ("[A]n employer ... should not be able to evade the requirements of the statute merely be paying ... benefits out of general assets."); *Williams v. Wright*, 927 F.2d 1540, 1544 (11th Cir.1991)

(reversing a district court's ruling that an agreement was not an ERISA plan because the plan's source of financing was the company's general assets, instead finding that "the payment of benefits out of an employer's general assets does not affect the threshold question of ERISA coverage."); *Holland v. Burlington Indus., Inc.*, 772 F.2d 1140, 1145–46 (4th Cir.1985) (holding that a benefit plan which identified its source of financing as the company's general assets was within scope of ERISA), *summarily aff'd. sub nom. Brooks v. Burlington Indus., Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986), *abrogated, in part, on other grounds, Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Guiragoss*, 444 F.Supp.2d. at 656 (finding general assets a sufficient source of funding for an ERISA plan).

**8.** *See supra* note 4.

temporarily disabled.[9] The exemption is designed to exclude from ERISA coverage the disbursement of funds that are analogous to ordinary wages, paid while the employee is unable, but likely to return, to work, as opposed to those disbursements which are analogous to retirement income. While it seems axiomatic that short-term disability payments would be a temporary substitute for one's "normal compensation," it seems hardly reasonable that retirement benefits, paid to an employee who retires because of permanent disability, constitute "normal compensation." *See McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 36 (1st Cir.1998) ("The payroll practice rule thus excludes from ERISA coverage 'traditional sick leave [benefits] ... paid out of an employer's general operating funds.' ")(quoting *Shea v. Wells Fargo Armored Serv. Corp.*, 810 F.2d 372, 376 (2d Cir.1987)).[10] The court finds this distinction both reasonable and consistent with ERISA's purposes, and, therefore, finds that the payroll practices exemption does not apply to this case.

## B. Plan Intended to Provide ERISA Benefits

■ The court finds it abundantly clear that the 1992 Agreement is established in order to provide ERISA-covered benefits. The 1992 Agreement is entitled "Deferred Compensation Agreement" and the gravamen of the 1992 Agreement is expressed in "the desire of [Old Dominion] ... to agree to make certain payments to [the plaintiff] upon his retirement, and, alternately, to his beneficiaries in the event of his premature death." (Docket # 1, Ex. 1 at 1.) In other words, Old Dominion's desire was to provide to the plaintiff retirement (pension) benefits, whether due to age or disability, or death (welfare) benefits, precisely of the sort identified in the ERISA statute. *See* 29 U.S.C. § 1002(1) and (2)(A).

Moreover, the 1992 Agreement goes on to detail the type of benefits available, how they would be calculated, and discusses in subsequent Articles the extent of the rights and obligations of the parties to the agreement, including restrictions upon funding (Article IV), alienability and assignability of a beneficiary's rights (Article V(A)), and the agreement's "Effect on Other Benefit Plans" (Article V(E)). (Docket # 1, Ex. A at 6–7.) The 1992 Agreement specifically and completely deals with

9. In fact, the cases finding this particular payroll practices exemption applicable, some of which were cited by plaintiff, (*see* Docket # 8 at 9–11), all deal with temporary disability benefits. *See, e.g., Stern v. Int'l Bus. Machines Corp.*, 326 F.3d 1367, 1372 (11th Cir. 2003); *McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 36 (1st Cir.1998); *Schwartz v. Liberty Life Assurance Co. of Boston*, 470 F.Supp.2d 511, 517 (E.D.Penn.2007).

10. *See also Woods v. Berry, Fowles & Co.*, 2001 WL 1602055, No. CIV 01–CV–37–B–C, *10 (D.Me. Dec. 14, 2001) ("The payroll practice exception created in 29 C.F.R. § 2510.3–1(b) applies to occasional, temporary benefits paid from general assets, such as overtime, holiday pay, sick pay, vacation pay, pay during active military duty, training pay, and payments during sabbatical leave. Here, Ber-

ry, Fowles & Co.'s premium payments were ongoing, long-term payments and were not payments of compensation for any of the excluded purposes. Thus, the payroll practice exception does not control in this case."); *Toledo v. Ayerst–Wyeth Pharma. Inc.*, 852 F.Supp. 91, 99 (D.Puerto Rico 1993) (rejecting defendant's claim that payment of disability benefits out of a company's general assets was a payroll practice exempt from ERISA, pursuant to 29 C.F.R. § 2510.3–1(b)(2), instead finding that Department of Labor opinions on that issue "suggest that a disability plan falls into the aforementioned payroll practice exemption if it is designed to replace the loss of an employee's normal compensation for absences from work resulting from medical problems that are foreseeably temporary.")

ERISA-covered benefits, and it was clearly established for that purpose.[11]

## II. Claim of Benefits by Plaintiff

■ It is also clear to the court that the plaintiff's state law breach of contract claim falls within ERISA § 502(a), 29 U.S.C. § 1132(a), and is, thus, removable to this court. *See Metropolitan Life Ins. Co.*, 481 U.S. at 66–67, 107 S.Ct. 1542. The plaintiff admits, both on the face of his Complaint and in his Motion to Remand, to seeking benefits purportedly due under the 1992 Agreement and to seeking enforcement of his rights under the 1992 Agreement. Regarding benefits, the plaintiff states in his Motion to Remand that he seeks "to have the 2008 Document found unenforceable and to *enforce his interest in disability benefits in accordance with the 1992 Agreement ...*" (Docket # 8 at 2 (emphasis added).) Similarly, with regard to his rights, in the Complaint the plaintiff specifically states that he is seeking to "*enforce the 1992 Deferred Compensation Agreement which entitles* the Plaintiff to [$639,253.13] in accordance with the disability portion of the

1992 Agreement." (Docket # 1 at 20 (emphasis added).)

"[T]he question of § 502(a) preemption turns in large measure on the relief sought. Where the relief sought is the recovery, enforcement or clarification of rights to benefits, § 502(a) preemption applies." *Warren v. Blue Cross and Blue Shield of South Carolina*, No. 97–1374, 1997 WL 701413, *3 n. 1, 1997 U.S.App. LEXIS 31793, *7 n. 1 (4th Cir.1997). Therefore, as the court has concluded that ERISA governs the 1992 Agreement, and that the state law contract claim seeks benefits due under the 1992 Agreement, ERISA compels the conclusion that the state law contract claim is preempted and removable. *See Guiragoss*, 444 F.Supp.2d at 658.

## CONCLUSION

For the reasons stated above, the court **FINDS** that the plaintiff's breach of contract claim is completely preempted by ERISA and was properly removed to this court. Moreover, the court **FINDS** that the plaintiff's remaining state law claims were properly removed to this court under this court's supplementary and pendent

---

**11.** The plaintiff argues, in part, that because "nothing in the 1992 Agreement states that the contract is an ERISA plan governing ERISA benefits" and because the 1992 Agreement offered benefits merely as "contractual incentives meant to entice the Plaintiff into remaining an employee ... to interpret Old Dominion's decision to extend disability and retirement benefits in the 1992 Agreement as evidence that they intended to create an ERISA benefit plan is too broad of an interpretation." (*See* Docket # 8 at 8.) However, the plaintiff misapprehends the purpose of ERISA. Regardless of whether the employer had the specific intent to create an ERISA plan, if the employer intended to and did create a plan which distributes benefits of the sort covered by ERISA, it is automatically an ERISA-covered plan. *See Guiragoss*, 444 F.Supp.2d at 657 (finding a plan, which was

created "to retain the valuable services of the Employee" and "provide the Employee with a supplemental retirement benefit and/or death benefit" was an employee benefit plan covered by ERISA); *cf. Hagel v. United Land Co.*, 759 F.Supp. 1199, 1202, 1203 (E.D.Va.1991) (finding that where an agreement incidentally results in payment of benefits, the agreement is not an employee benefit plan subject to ERISA). Moreover, in this case, the 1992 Agreement goes through the process of identifying a plan administrator and claims procedures in Article VI, entitled "ERISA PROVISIONS," seemingly in order to comport with ERISA notice and administrative requirements, and specifically refutes the idea that it is an employment agreement in Article II(B). These specific factual indicators show the intent to create an ERISA employee benefit plan.

jurisdiction. Accordingly, the plaintiff's Motion to Remand is **DENIED.**

**IT IS SO ORDERED.**